The STATE of Ohio, Appellee,

v.

LEE, Appellant.

[Cite as *State v. Lee* (1990), 66 Ohio App.3d 773.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1356.

Decided June 12, 1990.

*Michael Miller,* Prosecuting Attorney, and *Joyce S. Anderson,* for appellee.

*James Kura,* County Public Defender, *Barbara J. Slutsky* and *Allen V. Adair,* for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Judy Lee, appellant, from a jury verdict convicting her of one count of theft in excess of $300, in violation of R.C. 2913.02, and one count of possessing criminal tools, in violation of R.C. 2923.24. The state's witness, Sue Fitzpatrick ("Fitzpatrick"), a Lazarus security employee, observed appellant for approximately thirty-five to forty minutes while appellant browsed through merchandise in the women's better dresses section. Fitzpatrick testified that appellant took six dresses into a fitting room area near the swimwear display. The witness was in the stall next to appellant and observed appellant by not only looking underneath the stall partition, but also by use of the mirrors. Fitzpatrick saw appellant hang four dresses on one hook and two dresses on another hook. Appellant then left the fitting room area for a brief moment, taking one dress with her, and returning with another. During appellant's absence, Fitzpatrick used her walkie-talkie to alert two other security personnel of where she was and what she had been observing.

According to Fitzpatrick, when appellant came back into the fitting room stall, she removed her coat, placed it on the hook over the four dresses, tucked the dresses into her coat, and then put her scarf on top. She again momentarily left the fitting room area taking one dress with her and returning with another. Fitzpatrick next testified that appellant rolled up the first four dresses and placed them inside the girdle she was wearing. Appellant then put on her coat, collected herself, and left the area carrying one of the remaining dresses. A few minutes later, Fitzpatrick followed appellant back into the fitting room area and watched appellant pull up her skirt, remove the dresses from her girdle, and throw them on the floor. Appellant then walked out of the fitting room and was stopped by two Lazarus security personnel.

The other two witnesses, special duty police officer Fred Bowditch and security employee Todd Billings, both testified that they were contacted by Fitzpatrick via a walkie-talkie and were asked to observe appellant in the

women's better dresses section. Both followed and observed appellant walking toward the north exit and, once reaching it, changing her direction and returning to the fitting rooms. Both witnesses watched Fitzpatrick walk into the fitting room behind appellant and, within a few brief moments, apprehended appellant when she was walking out of the fitting room.

Thereafter, appellant was indicted on one count of theft and one count of possessing criminal tools. Appellant's motions for acquittal were denied and the trial court disregarded appellant's request to instruct the jury on attempted theft. The jury found appellant guilty on both counts as charged and, thereafter, this appeal ensued. Appellant asserts the following two assignments of error:

"First Assignment of Error

"The court erroneously failed to repeat in its general charge matters previously covered in preliminary instructions.

"Second Assignment of Error

"The evidence does not support appellant's conviction for possessing criminal tools."

In her first assignment of error, appellant asserts that the trial court erred when it failed to repeat its preliminary jury instructions when it gave its general charge. Crim.R. 30 provides, in relevant part:

"(A) Instruction; Error; Record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, *but the court shall instruct the jury after the arguments are completed.* The court need not reduce its instructions to writing.

" * * *

"(B) Cautionary Instructions. *At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case.*" (Emphasis added.)

In the recent case of *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, the Supreme Court held:

"Accordingly, we hold that before the taking of evidence, a trial court may give preliminary instructions to the jury appropriate for the jury's guidance in hearing the case. A court may also give cautionary instructions throughout

the trial. After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *Id.* at 210, 553 N.E.2d at 644.

In applying this holding to the facts at bar, the partial transcript of proceedings indicates that, on Friday, October 13, 1989, the trial court made the following statement concerning how it would proceed before imparting preliminary instructions to the jury:

"Now it's my responsibility to instruct you at all stages in the trial and instruct you now on some preliminary matters. Before the closing comments of counsel, I will instruct you on the substantive areas of the law that we are dealing in. I will define for you what theft is, possession of criminal tool is, and also define for you reasonable doubt. Then we will have closing comments of counsel.

"And after closing comments of counsel, I will have a final opportunity to instruct you on your deliberation process and how you fill out the verdict forms."

Thereafter, the trial court preliminarily instructed the jury that it was their exclusive duty to decide all questions of fact, that they must not be influenced by any sympathy, prejudice or passion, that they should not place any emphasis on any one jury instruction, and that the attorneys were not witnesses and what they said was not evidence. These instructions also included discussions of the significance and procedure for ruling on objections, the correlation between questions and answers, the difference between direct and circumstantial evidence, permissible inferences, and the credibility and weighing of witness testimony. The trial court then informed counsel that it was going to charge the jury on theft and possession of criminal tools and denied defense counsel's request to charge on attempted theft. The trial was then continued to Monday, October 16, 1989.

After the presentation of evidence, but before the closing comments, the trial court reiterated that the jury's function was to decide facts while the trial court provided the instructions of law. The trial court stated that the jury had to apply the law as instructed, and reminded them of direct and circumstantial evidence, and the credibility and weight of witness testimony. The trial court explained that the appellant had a constitutional right not to testify and that this factor could not be considered against the appellant. Likewise, the jury could not consider the indictment against appellant. The trial court explained the state's burden of proof and the appellant's presumption of innocence. The trial court defined reasonable doubt and explained the elements, as well as defining the appropriate terms, of theft and possession of

criminal tools. The trial court also explained the term "prima facie evidence" as it related to a criminal tool.

Before the trial court allowed the attorneys to address the jury with their respective closing arguments, it again explained that comments of counsel were not evidence. In its final charge to the jury, the trial court read to the jury an explanation of prima facie evidence, told them that they must not be influenced by sympathy or prejudice, reiterated that it was their duty to decide the facts, weigh the evidence, apply the instructions of the trial court, and render a verdict accordingly. The trial court stated that the jury should disregard any comments or opinions they may have overheard and that each individual juror must decide the case for himself. The trial court explained to the jury that they should not discuss or consider punishment, explained the verdict forms, and explained the jury's responsibility to determine value in this case.

In applying the facts and holding of *Comen* to the facts of the matter herein, appellant has presented no evidence that she was prejudiced by the trial court's failure to repeat all instructions in its final charge to the jury. Although the Supreme Court strongly stated in *Comen* that the proper procedure was for the trial court to explicitly follow Crim.R. 30, the record indicates that the actual presentation of evidence at trial in this case took only one day, which seemingly would minimize any prejudice to the appellant since the preliminary, intermediary, and final jury instructions were given within a relatively short time span of each other. That is not to suggest that Crim.R. 30 should be disregarded in trials of relatively short length. To the contrary, the proper procedure for the trial court to follow is that set forth in Crim.R. 30.[1] It is only under the facts of this case, as in *Comen*, that no prejudice was

---

1. The Supreme Court stated in *Comen, supra,* 50 Ohio St.3d at 209, 553 N.E.2d at 644:
   "Crim.R. 30(A) clearly requires that ' * * * the court *shall* instruct the jury after the arguments are completed * * *.' The language in the rule is mandatory and there is good reason for the mandate. Jurors, being laypersons selected from the citizens of a particular district, are better able to grasp the importance of instructions after they have heard all the evidence.
   "Likewise, Crim.R. 30(B) plays an important part in the trial process. Preliminary instructions prepare the jury for trial providing orientation so the jury is properly informed as to its duties and responsibilities. Cautionary instructions are often utilized in instructing the jury to consider only certain evidence for a specific purpose, or to inform the jury not to be influenced by extraneous matters.
   "If the preliminary or cautionary instructions include matters of law vital to the rights of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed. Repeating instructions means fully instructing the jury on the law applicable to the case and not providing them simply with a cursory reminder of what was earlier provided in either the preliminary or cautionary instructions. Regardless of the length of trial, the court cannot assume the jury recalls or remembers the prior instructions."

demonstrated by the trial court's instructing otherwise. Accordingly, appellant's first assignment of error is not well taken and is overruled.

In her second assignment of error, appellant asserts that the evidence does not support her conviction for a possession of a criminal tool. The statute setting forth the requisite elements for the offense of possessing criminal tools, R.C. 2923.24, provides:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use.

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

Thus, the elements of the crime of possessing criminal tools are: (1) to have possession or control of, (2) any substance, device, instrument, or article, (3) for a criminal use. The state must prove that the appellant intended to use "burglariously" any implements, such as the girdle in this case, described in the indictment. See *State v. Cimpritz* (1952), 93 Ohio App. 407, 51 O.O. 173, 113 N.E.2d 662; see, also, *State v. Fields* (Oct. 23, 1980), Franklin App. No. 79AP–905, unreported. Thus, the focus is on the intended use or conduct rather than on the particular substance, instrument or article.

In the case at bar, Fitzpatrick, the eyewitness, testified as follows:

"Q. Okay. Did she enter the fitting room again?

"A. She came back with another dress, put it on the opposite hook. She stood there for a minute. She never did try on any clothes. She took her coat off the hook and a scarf that was covering the dresses. She put it on the other hook. She picked up these four dresses, hangers and all, and she started folding them and rolling the sleeves around the hangers and kept turning it down, rolling them really tight.

"Q. Would that be all four dresses together?

"A. Yes. All the dresses and all the hangers.

"Q. Okay.

"A. She rolled them real tight. She pulled up—she had a long black full skirt. She pulls it up, and she pulls out a girdle and she stuffs hangers, dresses and all, way down in the girdle and pulls it back around and then pulls her dress down and fixes it.

"Q. Okay. After she stuck the dresses in there, you said that, you said that she fixed it. What do you mean by fixing it?

"A. She kept pushing down on the hanger and pushing the girdle around so you couldn't tell there was any hangers or dresses down in her girdle.

"Q. What did she do—you said after she was fixing it, what else did she do?

"A. She put her coat back on and she tied like a belt or buttoned it or something. I don't recall. She closed it all up, put her scarf on, put her purse on her shoulder and grabbed one dress and walked out."

This testimony supports the conclusion that appellant had possession of the girdle with the purpose to use it in a theft offense in violation of R.C. 2913.02. See R.C. 2923.24. Appellant offered contradictory evidence in the form of a letter signed by her physician which stated that the appellant was medically advised to purchase and wear a lumbosacral corset to relieve her back problem. Thus, the issue became a matter of credibility to be determined by the trier of fact, the jury in this instance. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Based on the record before this court, there was sufficient evidence to support the jury's finding that the girdle that appellant was wearing was used by her for a criminal purpose, *i.e.*, to commit a theft offense. See *State v. Ford* (1986), 31 Ohio App.3d 99, 31 OBR 169, 508 N.E.2d 1021.

Accordingly, appellant's second assignment of error is not well taken and is overruled.

Having overruled appellant's first and second assignments of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

RUMER, J., dissents.

MICHAEL A. RUMER, J., of the Allen County Court of Common Pleas, sitting by assignment.

RUMER, Judge, dissenting.

I disagree with the majority's holding that the procedures followed by the trial judge in the instant action satisfy the requirements of *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, or Crim.R. 30(A). Thus, I must respectfully dissent as to the first assignment of error.

The majority's statement of the case is correct. However, notwithstanding the fact that defense counsel did not object to the trial judge's approach to jury instructions as provided in Crim.R. 30(A), I submit the approach utilized was plain error, prejudicial to the appellant and, therefore, a new trial is required.

As outlined by the majority opinion, the trial judge trifurcated the jury instructions into essentially these areas: (1) preliminary matters contemplated by Crim.R. 30(B) at the commencement of trial and before any evidence; (2) elements of the offenses charged, presumption of innocence, reasonable doubt, and prima facie evidence after the evidence, but before closing arguments; and (3) repeated prima facie evidence, boilerplate closing comments and the requirement of a special finding of value as to the theft charge.

While I have no problem with the first segment of the instructions which are preliminary in nature and clearly provided for by Crim.R. 30(B), it is my opinion that Crim.R. 30(A) requires that the same be repeated after closing arguments and not merely be adopted by reference as was done here. As pointed out by Justice Douglas in *Comen, supra,* at 209, 553 N.E.2d at 644:

"If the preliminary or cautionary instructions include matters of law vital to the rights of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed. Repeating instructions means fully instructing the jury on the law applicable to the case and not providing them simply with a cursory reminder of what was earlier provided in either the preliminary or cautionary instructions. Regardless of the length of trial, the court cannot assume the jury recalls or remembers the prior instructions."

Such verbiage is not wasted effort and applies directly to the facts at bar. The jury trial herein commenced in the morning hours of October 13, 1989. The preliminary instructions and opening statements were given and the court recessed for lunch. October 13, 1989 was a Friday. However, the court did not reconvene the jury until Monday morning, October 16, 1989. The trial was concluded October 16, 1989 without repeating any of the instructions previously given.

The record reflects that before closing arguments of counsel, the trial judge stated:

"In the beginning of the trial I instructed you on what is evidence, direct and circumstantial, that you are the sole judges of the facts, credibility of the witnesses and the weight to be given to the testimony. I will not repeat those instructions, but I want you to consider those and keep those in mind in deliberating in this case."

As Justice Douglas states: " * * * the court cannot assume the jury recalls or remembers the prior instructions." *Comen, supra,* at 209, 553 N.E.2d at 644.

A second and more cogent point is that the second set of instructions given by the trial judge in the case before us was neither preliminary nor cautionary as permitted by Crim.R. 30(B). The instructions are clearly substantive law which must be given in strict compliance with Crim.R. 30(A). As noted in *Comen, supra,* the language of Crim.R. 30(A) is mandatory.

In this judge's opinion, the case at bar demonstrates why Crim.R. 30(A) requires that " * * * the court shall instruct the jury after the arguments are completed." In his first set of instructions, the trial judge dealt with the matters of credibility, weight of the evidence and evidence, both direct and circumstantial. However, in the second set of instructions, he discussed prima facie evidence and presumption. After closing arguments and in his third set of instructions, the trial judge again instructed on prima facie evidence along with his closing comments. This emphasis clearly prejudiced the defendant by permitting the jury to believe special emphasis should be placed on the subject of prima facie evidence.

The significance of this emphasis lies in the court's instruction relative to the elements for possession of criminal tools (R.C. 2923.24) which was given before closing argument and then repeated subsequent thereto. R.C. 2923.24 reads:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specifically adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use."

Such a bifurcation of the elements of the crime and an instruction on prima facie evidence overemphasizes the value of the presumption in favor of the state and to the prejudice of the defendant.

For these reasons, I would find defendant's first assignment well taken and order the matter remanded for a new trial.